UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEREMIAH F. HERBERT,

                              Plaintiff,

                    -against-

WARDEN HAROLD L. SMITH, et al.,

                              Defendants.

**MEMORANDUM OPINION
AND ORDER**

20-CV-06348 (PMH)

PHILIP M. HALPERN, United States District Judge:

Jeremiah F. Herbert ("Plaintiff"), a pretrial detainee at Sullivan County Jail ("SCJ"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against Janet Calangelo ("Calangelo"), Michael Ruggiero ("Ruggiero"), Steven Matis ("Matis"), Warden Harold L. Smith ("Smith"), James E. Ginty ("Ginty"), and Chris Bini ("Bini," and collectively, "Defendants"). Plaintiff asserts two claims for relief: (1) religious discrimination in violation of his First Amendment rights; and (2) inhumane conditions of confinement in violation of the Fourteenth Amendment.[1]

This case was reassigned from Judge Stanton to me on September 25, 2020. Plaintiff's unsigned Second Amended Complaint ("SAC") was docketed on September 29, 2020. (Doc. 14). The Court, in an Order of Service issued on October 5, 2020, (1) granted Plaintiff leave to file a Third Amended Complaint to provide facts sufficient to state a Fourteenth Amendment conditions of confinement claim (Doc. 15 at 4); and (2) permitted Plaintiff to effect service on Calangelo,

---

[1] Plaintiff brings this action as a pretrial detainee. (Doc. 6 at 1). "Claims of pretrial detainees arise under the Due Process Clause of the Fourteenth Amendment rather than the Cruel and Unusual Punishment[s] Clause of the Eighth Amendment." (*Id.* at 5 n.6 (citing *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979) and *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)).

Ruggiero, Matis, Smith, Ginty, and Bini (*id*. at 8-9). Thereafter, on October 19, 2020, Plaintiff's Third Amended Complaint ("TAC") was docketed. (Doc. 18).

The Court issued an Order on November 16, 2020, which stated, *inter alia*, that "Plaintiff's remaining claims include the religious discrimination claims asserted in Plaintiff's [SAC] and the unconstitutional conditions of confinement claim asserted in Plaintiff's TAC." (Doc. 30 at 6). Giving every benefit to the *pro se* Plaintiff, the Court determined that "these two surviving claims . . . together constitute the operative pleading." (*Id*.).

On February 18, 2021, Defendants moved to dismiss the operative pleading, i.e., Plaintiff's religious discrimination claim in the SAC and his conditions of confinement claim in the TAC, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Docs. 56; Doc. 57; Doc. 59, "Defs. Br."). On March 2, 2021, a document was docketed that the Court construes as Plaintiff's opposition to Defendants' motion to dismiss. (Doc. 65, "Pl. Opp."). Plaintiff annexed as exhibits to his opposition numerous copies of grievance forms and related documents. (Doc. 65-1, "Pl. Ex."). On March 30, 2021, Defendants filed their reply brief. (Doc. 71). For the following reasons, Defendants' motion to dismiss is granted.

## BACKGROUND

While incarcerated at SCJ, Plaintiff alleges that Bini, Ginty, Smith, Ruggiero, and Matis were responsible for (1) physically and verbally assaulting him June 16, 2020, June 30, 2020, and July 30, 2020 because of his Muslim faith, (2) denying him access to Friday night Jumah services, and (3) denying him access to an imam. (SAC ¶ 6).

Plaintiff also alleges that he has been "forced to endure deplorable conditions" of confinement. (TAC at 9).[2] For starters, on June 5, 2020, Smith, Bini, Matis, and Ruggiero allegedly

---

[2] Citations to page numbers of documents filed by Plaintiff correspond to the pagination generated by ECF.

placed him in the D-Pod housing unit with Trevor Nelson and Joseph Powell—two inmates that had "'fight-risk'/keep away" orders issued against them. (*Id*. at 8). According to Plaintiff, these two inmates assaulted him, resulting in serious physical injuries. (*Id*.).

Plaintiff further alleges a series of health and hygiene-related problems at SCJ. According to Plaintiff, Bini, Smith, Ginty, Matis, and Ruggiero deprived him of unspecified "medical care and minimum [] life necessities." (*Id*.). He also allegedly suffered "difficulty breathing, headaches, and temporary dizziness" due to being denied recreation periods on April 22, July 19, July 30, August 5, August 10, and August 20, 2020. (*Id*. at 9-10). Moreover, he alleges that he suffered "headaches, trouble breathing, and sinus problems" due to sewage, insects, mildew, and "toxic mold" in the showers. (*Id*. at 9, 11). He also "suffered weight loss" because Bini, Ginty, Calangelo, and Matis allegedly served him "contaminated" and "spoiled" food. (*Id*. at 9). Lastly, he alleges that he was denied a shower with hot water (*id*. at 10); his sick call slips were "purposefully ignored" (*id*. at 11); he was unnecessarily exposed to the COVID-19 virus (*id*. at 9); Defendants retaliated against him and physically assaulted him (*id*. at 11); and on August 5, 2020, he was "abused and seriously harassed" by all Defendants at the behest of Smith (*id*. at 12).

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin

3

to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y.

July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations . . . in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court also has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## **ANALYSIS**

I.   <u>Prison Litigation Reform Act ("PLRA") Exhaustion</u>

As a threshold matter, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints. However, a district court . . . may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (internal quotation marks omitted).

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199,

218 (2007) (internal citation omitted). When a prisoner is in a state-run prison, courts are required to "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009).

Plaintiff has filed numerous grievances while at SCJ, including (as Defendants concede) at least one grievance regarding his religious discrimination claim. (Defs. Br. at 19). Several of these grievances are annexed to Plaintiff's pleadings and opposition. (*See generally* SAC, TAC, Pl. Opp.). Defendants argue, however, that "jail records" reveal that Plaintiff did not file grievances regarding the following allegations: (1) deprivation of medical care and minimum life necessities; (2) the presence of sewage, insects, mildew, and mold in the shower; (3) Plaintiff's sick call slips being purposefully ignored; (4) Defendants' retaliation against Plaintiff; and (5) "abuse and harassment" occurring on August 5, 2020 upon Smith's orders. (Defs. Br. at 19). Therefore, Defendants argue that only certain aspects of Plaintiff's conditions of confinement claim should be adjudicated herein.[3]

But Defendants' representation about the lack of "jail records," without more, is insufficient to establish that Plaintiff failed to exhaust all aspects of his conditions of confinement claim. (*Id.*).[4] This is especially so, where, as here, Plaintiff affirmatively alleges in his TAC that

---

[3] Defendants purport to move under Rule 12(b)(1) due to Plaintiff's alleged failure to exhaust. (Defs. Br. at 19-20). But exhaustion is not jurisdictional. *See Arnold v. Goetz*, 245 F. Supp. 2d 527, 531 (S.D.N.Y. 2003) ("[T]he PLRA's exhaustion requirement is not jurisdictional in nature."); *see also Rodriguez v. Ghoslaw*, No. 98-CV-04658, 2002 WL 1424586, at *2 (S.D.N.Y. June 28, 2002) ("Failure to exhaust is not a jurisdictional matter."). Rather, "failure to comply with the PLRA's exhaustion requirement is viewed as an affirmative defense." *Hallett v. New York State Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 196 (S.D.N.Y. 2000); *see also Gonzalez v. Officer in Charge of Barber Shop on Duty on May 13, 1999*, No. 99-CV-03455, 2000 WL 274184, at *3 (S.D.N.Y. Mar. 13, 2000) ("When a defendant raises a prisoner's failure to comply with the PLRA's exhaustion requirement, the failure is properly assessed as an affirmative defense.").

[4] Defendants cite to Smith's affidavit in making their failure-to-exhaust argument. (Defs. Br. at 19 (citing Doc. 58)). But the Court cannot consider such additional material without converting Defendants' motion to one for summary judgment. *See Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) ("[A] district court errs when it 'consider[s] affidavits and exhibits submitted by' defendants . . . in ruling on a 12(b)(6) motion to dismiss.") (internal citations omitted)).

"complaints and grievance[s] [were] filed" with respect to this claim. (TAC at 8). Thus, given Defendants' lack of evidentiary support, as well as the deference the Court must give Plaintiff's allegations at this stage, it is not "clear on the face of the complaint" that Plaintiff failed to exhaust all aspects of his conditions of confinement claim. *Priatno*, 829 F.3d at 122. Accordingly, Defendants' motion to dismiss on that basis is denied.

II.   Section 1983 Claims

A.   Religious Discrimination (First Amendment and Religious Land Use and Institutionalized Persons Act "RLUIPA")

The Court construes the operative pleading to allege a religious discrimination claim under the First Amendment and the RLUIPA.

For a First Amendment claim, the question at the pleading stage is whether the plaintiff has alleged facts showing that "defendants significantly interfered with [plaintiff's right to exercise his] religious beliefs." *McEachin v. McGuinnis*, 357 F.3d 197, 203 (2d Cir. 2004). In the same vein, "[t]he RLUIPA 'protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion.'" *Lloyd v. City of New York*, 43 F. Supp. 3d 254, 263 (S.D.N.Y. 2014) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005)). The "RLUIPA prohibits the government from burdening a prisoner's freedom to exercise his or her religion unless it can demonstrate that the burden 'is in furtherance of a compelling governmental interest,' and 'is the least restrictive means of furthering that compelling governmental interest.'" *Id*. (quoting 42 U.S.C. § 2000cc-1(a)). "A plaintiff alleging a RLUIPA violation must first show that the challenged conduct substantially burdened his sincerely held religious beliefs." *Id*. "[W]hile mere inconvenience to the adherent is insufficient to establish a substantial burden, demonstrating a substantial burden is

not an onerous task for the plaintiff." *Id*. (quoting *Singh v. Goord*, 520 F. Supp. 2d 487, 498 (S.D.N.Y. 2007)).

Here, Plaintiff alleges that he was subjected to "verbal and physical attacks" due to his Muslim faith. (SAC ¶ 6). Plaintiff also alleges that he was denied access to Jumah services and an imam from January 2020 to the time the SAC was filed. (*Id*.). For the following reasons, Plaintiff's allegations fail to state a claim under both the First Amendment and the RLUIPA.

Although Plaintiff alleges that Bini, Ginty, Smith, Ruggiero, and Matis were responsible for "verbal and physical attacks" against him, he does not specify *what* they said to him or *how* they attacked him. (SAC ¶ 6). Further, he does not specify the extent of each Defendant's involvement in these alleged attacks. *See Kellier v. Billups*, No. 21-CV-03921, 2021 WL 2435556, at *5 (S.D.N.Y. June 14, 2021) ("To state a claim under section 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation."). Plaintiff also fails to explain how Bini, Smith, Ruggiero, and Matis denied him access to Jumah services and an imam, or the circumstances under which such denial occurred. (*Id*.).

Ultimately, given operative pleading's dearth of specificity, the Court finds that Plaintiff has failed to plausibly allege that his right to freely exercise his religion was "significantly interfered with" in violation of the First Amendment, *McEachin*, 357 F.3d at 203, or "substantially burdened" in violation of the RLUIPA, *Lloyd*, 43 F. Supp. 3d at 263.

Accordingly, Plaintiff's religious discrimination claim is dismissed.

## B.  Conditions of Confinement (Fourteenth Amendment)

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate

indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). "This means that a pretrial detainee must satisfy two prongs to prove a claim, an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong'—perhaps better classified as a '*mens rea* prong' or 'mental element prong'—showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id*. "Under both the Eighth and Fourteenth Amendments, to establish an objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.'" *Id*. at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). "[T]o establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety. In other words, the 'subjective prong' (or '*mens rea* prong') of a deliberate indifference claim is defined objectively." *Id*. at 35.

i. *June 5, 2020 Assault in D-Pod Housing Unit*

"District courts in the Second Circuit have pointed to the existence, or lack thereof, of no-contact orders as indications that a substantial risk of harm may exist." *Mays v. Falu*, No. 18-CV-06145, 2019 WL 6619330, at *8 (S.D.N.Y. Dec. 5, 2019); *see also Smith v. Cty. of Westchester*, No. 17-CV-09858, 2019 WL 3006407, at *1-3 (S.D.N.Y. July 10, 2019) (concluding that the plaintiff satisfied the objective prong under the Fourteenth Amendment when he was attacked by an inmate with whom he had previously fought and "inferring . . . [a] keep-separate order [was] in

9

response to a risk of serious physical harm to [the] plaintiff"); *Ortiz v. Stancari*, No. 94-CV-01685, 1997 WL 539925, at *5 (S.D.N.Y. Aug. 28, 1997) (stating that a no-contact order, for which the reason was unspecified, between the plaintiff and another inmate should have indicated that they were to be kept apart).

Plaintiff alleges that on June 5, 2020, Smith, Bini, Matis, and Ruggiero placed him in the D-Pod housing unit with Trevor Nelson and Joseph Powell—two inmates with "'fight-risk'/keep away" orders issued against them. (TAC at 8). Construing the operative pleading liberally, as the Court must, the Court assumes that these "'fight-risk'/keep away" orders were no-contact orders issued to prevent Nelson and Powell from interacting with Plaintiff or other inmates generally. Sometime after Plaintiff was placed in the D-Pod unit, Nelson and Powell allegedly assaulted him, causing serious physical injuries. (*Id.*). Therefore, Plaintiff has satisfied the objective prong.

Plaintiff, however, fails to allege that Smith, Bini, Matis, or Ruggiero exposed him to this substantial risk of serious harm either intentionally or recklessly. Indeed, he does not allege that any of these Defendants "knew[] or should have known" that the no-contact orders existed, nor that placing him in a cell with Nelson and Powell would otherwise "pose[] an excessive risk to [Plaintiff's] health or safety." *Darnell*, 849 F.3d at 35. As such, Plaintiff's allegations fail to satisfy the subjective prong.

Accordingly, Plaintiff's conditions of confinement claim is dismissed with respect to allegations related to the alleged June 5, 2020 assault in the D-Pod housing unit.

    ii. *Medical Claim*

Next, Plaintiff alleges that Bini, Smith, Ginty, Matis, and Ruggiero deprived him of unspecified "medical care and minimum [] life necessities." (TAC at 8). But Plaintiff does not identify the injuries from which he allegedly suffers that require medical care, how or when such

medical care was denied, or what impact the denial of care had on his health and well-being. Absent such information, the Court cannot determine whether the alleged "conditions were sufficiently serious" or "posed an excessive risk to health or safety." *Pineiro*, 849 F.3d at 29, 35.

Accordingly, Plaintiff's conditions of confinement claim is dismissed with respect to allegations related to the alleged deprivation of "medical care and minimum [] life necessities." (TAC at 8).

### iii.   *Denial of recreation periods*

"Exercise is a basic human need protected by the Eighth Amendment (and necessarily by the Fourteenth Amendment as well)." *Patterson v. Ponte*, No. 16-CV-03156, 2017 WL 1194489, at *5 (S.D.N.Y. Mar. 30, 2017), *adopted by* 2017 WL 1405753 (S.D.N.Y. Apr. 17, 2017). That being said, "[s]poradic infringement of the right to exercise does not rise to the level of to a constitutional deprivation." *Gamble v. City of New York ex rel. NYC Dep't of Corr.*, No. 04-CV-10203, 2009 WL 3097239, at *5 (S.D.N.Y. Sept. 25, 2009).

Here, Plaintiff allegedly suffered "difficulty breathing, headaches, and temporary dizziness" due to being denied six recreation periods between April and August 2020. (*Id.* at 9-10). For the following reasons, however, such allegations do not give rise to a cognizable conditions of confinement claim.

First, Plaintiff does not allege the personal involvement of any Defendant in the denial of his recreation periods. *See Kellier*, 2021 WL 2435556, at *5. Second, Plaintiff only alleges "occasional restrictions on recreation," which, as a matter of law, do not constitute a "severe deprivation." *Patterson*, 2017 WL 1194489, at *5; *see also Gibson v. City of New York*, No. 96-CV-03409, 1998 WL 146688, at *3 (S.D.N.Y. Mar. 25, 1998) (dismissing Fourteenth Amendment conditions of confinement of claim based on denial of access to recreation where plaintiff was

denied access to recreation on eight occasions). Third, although Plaintiff does not specify why he was denied recreation periods, the timing of the alleged denials, coupled with SCJ's explanation for denying Plaintiff's grievance related to these denials (Pl. Ex. at 24),[5] indicates that Plaintiff was denied recreation periods not because of Defendants' deliberate indifference; but rather, as a result of health and safety restrictions implemented at SCJ to prevent the COVID-19 virus's spread among the inmate population—a sufficiently "unusual circumstance[]" to justify such a denial. *Cf. Gamble*, 2009 WL 3097239, at *4 ("Deprivations of exercise must be limited to unusual circumstances.").

Accordingly, Plaintiff's conditions of confinement claim is dismissed with respect to allegations related to the alleged deprivation of recreational periods. (TAC at 9-10).

### iv. *Shower Conditions*

Plaintiff alleges that he suffered "headaches, trouble breathing, and sinus problems" due to "toxic mold" and mildew in the showers. (TAC at 9). Plaintiff also alleges that he suffered the same discomfort due to sewage and insects in the showers. (TAC at 11). Although "society does not expect or intend prison conditions to be comfortable," *D'Attore v. New York City*, No. 10-CV-03102, 2011 WL 3629166, at *5 (S.D.N.Y. June 2, 2011), *adopted by* 2011 WL 3629018 (S.D.N.Y. Aug. 17, 2011), such allegations "may, in certain circumstances, satisfy the objective element of a conditions of confinement claim provided that plaintiff alleges that he or she suffered, or is at substantial risk of suffering from, an injury or health problem as a result . . . ." *McNair v. Ponte*, No. 16-CV-04646, 2018 WL 3300675, at *8 (S.D.N.Y. Feb. 22, 2018) (quoting *Reid v. Nassau Cty. Sheriff's Dep't*, 2014 WL 4185195, at *14 n.14 (E.D.N.Y. Aug. 20, 2014) (brackets

---

[5] In a memorandum dated May 25, 2020, one of Plaintiff's grievances regarding his lack of recreation periods was denied because the SCJ population "ha[d] been restricted to their individual cells" "[i]n an effort to manage the spread of the COVID-19 virus." (Pl. Ex. at 24, 31).

omitted)), *adopted by* 2018 WL 1384522 (S.D.N.Y. Mar. 19, 2018). Plaintiff's allegations here, however, fail to plausibly state a conditions of confinement claim for the following reasons.

First, regarding Plaintiff's mold and mildew allegations, courts have held that "the presence of dangerous mold and mildew in the shower may meet the objective prong," *Brown v. New York*, No. 20-CV-06042, 2020 WL 3630388, at *4 (W.D.N.Y. June 26, 2020). But "even viewed in the most favorable light . . . [P]laintiff[] fail[s] to allege facts showing the personal involvement of any defendant . . ., much less that any defendant knew about the mold [or mildew], as well as [their] risks, and exhibited deliberate indifference to th[ose] dangers." *McNair*, 2018 WL 3300675, at *8.

Second, as to Plaintiff's insect allegations, "[t]he mere presence of vermin in a detainee's housing area does not constitute a denial of the minimal civilized measure of life's necessities," *Clay v. Lee*, No. 13-CV-07662, 2019 WL 1284290, at *5 (S.D.N.Y. Mar. 20, 2019) (internal quotation marks omitted)). And, crucially, Plaintiff does not specify how many insects were in the shower area, the extent of his exposure to these insects, or how any Defendant was personally involved in permitting the shower area to become infested.

Third, with respect to Plaintiff's sewage allegations, "[t]he Second Circuit has held that for prison officials 'knowingly to allow an area to remain filled with sewage and excrement for days on end' would satisfy the objective prong." *D'Attore*, 2011 WL 3629166, at *6 (quoting *Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001)). Plaintiff, however, does not allege that Defendants "knowingly" allowed the sewage problem lasted for "days on end." *Id*. Indeed, based on the operative pleading, it is entirely unclear how long this problem lasted, and how Defendants were responsible for causing it.

13

Lastly, Plaintiff alleges that he was denied a shower with hot water. (TAC at 10). But such allegations are insufficient as a matter of law to state a conditions of confinement claim. *See Cantey v. Martuscello*, No. 16-CV-01008, 2017 WL 3190725, at *3 (N.D.N.Y. June 8, 2017) ("Inmates do not have a constitutional right to hot water (citing *Hodge v. Sidorowicz*, No. 10-CV-00428, 2011 WL 6778524, at *20 (S.D.N.Y. Dec. 20, 2011), *adopted by* 2012 WL 701150 (S.D.N.Y. Mar. 6, 2012))), *adopted by* 2017 WL 3175603 (N.D.N.Y. July 26, 2017).

For the foregoing reasons, Plaintiff's conditions of confinement claim is dismissed with respect to allegations regarding shower conditions. (TAC at 9, 11).

### v.   *Contaminated Food*

"Pre-[trial] detainees and prisoners are entitled to 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'" *Warren v. City of New York*, No. 18-CV-04410, 2020 WL 353772, at *3 (S.D.N.Y. Jan. 21, 2020) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)). "Generally, 'a single incident of contaminated food does not rise to the level of a substantive due process violation.'" *Id.* (quoting *Roundtree v. City of New York*, No. 15-CV-08198, 2018 WL 1586473, at *8 (S.D.N.Y. Mar. 28, 2018)).

Here, Plaintiff alleges that he "suffered weight loss" because Bini, Ginty, Calangelo, and Matis served him "contaminated" and "spoiled" food. (TAC at 9). Although unclear, Plaintiff appears to be referring to a single instance when he was served expired milk. (Pl. Ex. at 59). This allegation fails to satisfy the objective prong because Plaintiff alleges only a "single incident" of being served expired milk. *Warren*, 2020 WL 353772, at *3; *see also Maldonado v. Westchester Cty.*, No. 18-CV-11410, 2021 WL 356155, at *4 (S.D.N.Y. Feb. 2, 2021). Further, Plaintiff does

14

not allege that the single serving of expired milk, which allegedly caused him to lose weight, "posed an excessive risk to health or safety." *Pineiro*, 849 F.3d at 29, 35.

Accordingly, Plaintiff's conditions of confinement claim is dismissed with respect to allegations regarding contaminated food. (TAC at 9).

vi. *Sick Call Slips*

"Although a pre-trial detainee's right to be free from cruel and unusual punishment is rooted in the Fourteenth Amendment's protection of due process, Eighth Amendment analysis governs the merits of such a claim." *Williams v. Ramos*, No. 13-CV-00826, 2013 WL 7017674, at *6 (S.D.N.Y. Dec. 23, 2013). "Here, as in the context of a conditions-of-confinement challenge, a plaintiff must plead objective and subjective indifference, although the particulars of the analyses differ." *Id*. at *7. "To determine whether allegations of inadequate medical care are sufficient under the objective prong, a court must decide first, if the prisoner was actually deprived of adequate medical care and, second, whether the inadequacy in medical care is sufficiently serious." *Patterson*, 2017 WL 1194489, at *6 (internal quotation marks omitted). "The deprivation must be sufficiently serious such that the medical condition might have produced death, degeneration, or extreme pain." *Id*. (internal quotation marks omitted). "To satisfy the subjective test, a plaintiff must allege the defendant had a mental state akin to recklessness, which requires that the charged official acted or failed to act while actually aware of a substantial risk that serious inmate harm w[ould] result." *Williams*, 2013 WL 7017674, at *7 (cleaned up).

Plaintiff alleges that Smith and Ginty "purposefully ignored" his "sick call slips." (TAC at 11). But "[t]hese allegations are emblematic of [Plaintiff's] general, conclusory statements." *Roundtree*, 2018 WL 1586473, at *6. Therefore, they are insufficient to state a claim. And even assuming that Plaintiff's sick call slips were ignored, he does not put forth anything to suggest that

15

he was suffering from a "sufficiently serious" medical condition, *Patterson*, 2017 WL 1194489, at *6, or that Smith and Ginty were "aware of a substantial risk that serious inmate harm w[ould] result" from their alleged inaction. *Williams*, 2013 WL 7017674, at *7.

Accordingly, Plaintiff's conditions of confinement claim is dismissed with respect to allegations regarding his sick call slips. (TAC at 11).

### vii.   *COVID-19 Exposure*

Plaintiff alleges that, while incarcerated at SCJ, he experienced "unnecessary exposure" to the COVID-19 virus. (TAC at 9). The Court recognizes that "[t]he COVID-19 pandemic has caused an unprecedented health crisis, particularly in houses of detention." *Grant v. Decker*, No. 20-CV-02946, 2020 WL 3402445, at *1 (S.D.N.Y. June 19, 2020). And to be sure, under certain circumstances, an inmate's exposure to COVID-19 could "pose an unreasonable risk of serious damage to his health," thereby satisfying the objective prong. *Pineiro*, 849 F.3d at 29. For instance, a particularly vulnerable inmate with a significant underlying medical condition may fit the bill. *See Arias v. Decker*, 459 F. Supp. 3d 561, 572 (S.D.N.Y. 2020) ("[T]he Supreme Court has recognized that government authorities may be deemed 'deliberately indifferent to an inmate's current health problems' where they 'ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year,' including 'exposure of inmates to a serious, communicable disease,' even when 'the complaining inmate shows no serious current symptoms.'" (quoting *Helling v. McKinney*, 509 U.S. 25, 33 (1993)). Plaintiff, however, has not alleged that he falls in that category.

Moreover, Plaintiff has not alleged that his exposure to COVID-19 resulted from Defendants' "deliberate indifference." *Pineiro*, 849 F.3d at 35. To the contrary, grievances annexed to Plaintiff's opposition reveal that SCJ, with guidance from medical professionals, made

"effort[s] to manage the spread of the virus" by "restrict[ing] individuals to their cells." (Pl. Ex. at 24, 31). Thus, even if Plaintiff were able to satisfy the objective prong, he fails to satisfy the subjective prong.

Accordingly, Plaintiff's conditions of confinement claim is dismissed with respect to allegations regarding exposure to the COVID-19 virus. (TAC at 9).

### viii. *Retaliation*

Plaintiff alleges that Smith, Bini, Ginty, Calangelo, Matis, and Ruggiero "have subjected [him] to forms of illegal[] retaliation." (*Id.* at 11). That is all. Although Plaintiff says the word "retaliation," such passing references to constitutional violations alone do not state an actionable claim for relief. *Cf. Coke v. Koeningsman, et al.*, No. 19-CV-10038, 2021 WL 3115438, at *8 (S.D.N.Y. July 22, 2021); *Harrison v. City of Corning*, No. 15-CV-06716, 2016 WL 5871369, at *6 (W.D.N.Y. Oct. 7, 2016).

Accordingly, Plaintiff's conditions of confinement claim is dismissed with respect to allegations regarding alleged retaliation against him. (TAC at 11).

### ix. *Abuse and Harassment*

Finally, Plaintiff alleges that, on August 5, 2020, Smith ordered all of the Defendants to "abuse[] and seriously harass[]" him. (*Id.* at 12). Undeniably, correctional facilities can be, and often are, contentious environments. But Plaintiff does not allege *what* Smith ordered Defendants to do to him, or *how* Plaintiff suffered, if at all, as a result. A constitutional violation does not obtain from such vague and nonspecific allegations. *See, e.g.*, *Dilworth v. Goldberg*, No. 10-CV-02224, 2014 WL 3798631, at *9 (S.D.N.Y. Aug. 1, 2014) (dismissing conditions of confinement claim where plaintiff made "vague allegations").

Accordingly, Plaintiff's conditions of confinement claim is dismissed with respect to allegations regarding Defendants' abuse and harassment. (TAC at 12).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's operative pleading with prejudice with respect to certain allegations—specifically, allegations regarding (1) denial of access to Jumah services and an imam; (2) recreation periods; (3) shower conditions involving insects and hot water; (4) contaminated food; (5) exposure to COVID-19; (6) retaliation; and (7) unspecified abuse and harassment. *See Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) ("District courts should frequently provide leave to amend before dismissing a pro se complaint. However, leave to amend is not necessary when it would be futile." (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000))).

The Court GRANTS Defendants' motion to dismiss without prejudice with respect to the rest of Plaintiff's allegations supporting his religious discrimination claim and conditions of confinement claim. Plaintiff may file a Second Operative Pleading, should he be so advised, within 30 days from the date of this Order to address only the pleading deficiencies regarding: (1) verbal and physical attacks his Muslim faith; (2) the June 5, 2020 assault in the D-Pod housing unit; (3) deprivation of medical care and minimum life necessities; (4) the presence of mold, mildew, and sewage in the showers; and (5) sick call slips being ignored. No other amendments may be made.

Plaintiff is reminded that if he chooses to file a Second Operative Pleading, the Second Operative Pleading will completely replace, not supplement, the original operative pleading. Therefore, any facts or claims that Plaintiff wishes to maintain concerning his religious discrimination and conditions of confinement claims that were not herein dismissed with prejudice must be included in the Second Operative Pleading. Failure to comply with this Court's directions

18

for a limited amendment to address the issues identified herein will result in a dismissal of this action with prejudice.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk is instructed to terminate the motion sequence pending at Doc. 56 and to mail a copy of this Memorandum Opinion and Order to Plaintiff.[6]

                                                    **SO ORDERED:**

Dated: White Plains, New York
       August 2, 2021

                                    _____
                                    Philip M. Halpern
                                    United States District Judge

---

[6] Given the conclusions reached herein, the Court need not and does not reach Defendants' alternate argument regarding qualified immunity. (Defs. Br. at 21).

19