UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEREMIAH F. HERBERT,

                    Plaintiff,

          -against-

WARDEN HAROLD L. SMITH, et al.,

                    Defendants.

**MEMORANDUM OPINION
AND ORDER**

20-CV-06348 (PMH)

PHILIP M. HALPERN, United States District Judge:

Jeremiah F. Herbert ("Plaintiff"), a pretrial detainee at Sullivan County Jail ("SCJ"),

proceeding *pro se* and *in forma pauperis*, proceeds under 42 U.S.C. § 1983 against Janet Calangelo

("Calangelo"), Michael Ruggiero ("Ruggiero"), Steven Matis ("Matis"), Warden Harold L. Smith

("Smith"), James E. Ginty ("Ginty"), and Chris Bini ("Bini," and collectively, "Defendants") and

presses: (1) one claim for relief for religious discrimination;[1] and (2) four claims for relief for

inhumane conditions of confinement in violation of the Fourteenth Amendment.

Defendants moved to dismiss Plaintiff's First Operative Pleading[2] under Federal Rules of

Civil Procedure 12(b)(1) and 12(b)(6) on February 18, 2021 (Doc. 56), and this Court granted that

motion in a Memorandum Opinion and Order dated August 2, 2021 (the "Prior Order") (Doc. 82).[3]

---

[1] Although based on the same predicate facts, Plaintiff brings his religious discrimination claim under two theories (i.e., the First Amendment via 42 U.S.C. § 1983 *and* the Religious Land Use and Institutionalized Persons Act ("RLUIPA")). (Doc. 84, "SOP" at 7).

[2] After Plaintiff was twice given leave to replead his complaint, the Court issued an Order on November 16, 2020, which stated, *inter alia*, that "Plaintiff's remaining claims include the religious discrimination claims asserted in Plaintiff's Second Amended Complaint and the unconstitutional conditions of confinement claim asserted in Plaintiff's Third Amended Complaint." (Doc. 30 at 6). The claims referenced in that Order from the Second Amended Complaint and Third Amended Complaint (Doc. 18, "TAC") collectively constituted Plaintiff's First Operative Pleading. (*Id.*).

[3] The Prior Order is available on commercial databases. *See Herbert v. Smith*, No. 20-CV-06348, 2021 WL 3292263 (S.D.N.Y. Aug. 2, 2021). However, for ease of reference, the Court cites herein the copy of the Prior Order filed on the docket.

The Prior Order dismissed as futile seven of Plaintiff's twelve claims with prejudice. (*Id*. at 18). The Court, however, granted Plaintiff leave to replead and file a Second Operative Pleading within thirty days thereof to correct the deficiencies identified with respect to the remaining claims:

> (1) verbal and physical attacks on his Muslim faith; (2) the June 5, 2020 assault in the D-Pod housing unit; (3) deprivation of medical care and minimum life necessities; (4) the presence of mold, mildew, and sewage in the showers; and (5) sick call slips being ignored." (*Id*.). The Court warned that "[n]o other amendments may be made.

(*Id*.). Plaintiff timely filed a Second Operative Pleading, although it was not docketed until September 7, 2021. (*See* SOP). The Second Operative Pleading names the same Defendants as prior pleadings. (*Id*. at 3).[4]

On November 11, 2021, Defendants moved to dismiss the Second Operative Pleading under Federal Rule of Civil Procedure 12(b)(6) (Doc. 99; Doc. 100, "Def. Br."), Plaintiff filed an opposition brief on December 14, 2021 (Doc. 102, "Opp. Br."), and the motion was fully submitted with the filing of Defendants' reply memorandum of law on December 23, 2021 (Doc. 103, "Reply").

For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part.

The Court assumes the parties' familiarity with the factual allegations as laid out in the Prior Order and incorporates any additional factual allegations where appropriate *infra*.

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[4] Citations to the Second Operative Pleading correspond to the pagination generated by ECF.

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel." *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953

F.2d 26, 28 (2d Cir. 1991)). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations . . . in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court also has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

While construing Plaintiff's pleading liberally, as it must, the Court analyzes whether Plaintiff has corrected the deficiencies outlined in the Prior Order for the remaining five claims for relief.[5]

---

[5] Plaintiff brings this action as a pretrial detainee. (Doc. 6 at 1). Pretrial detainees' claims concerning the conditions of their confinement arise under the Due Process Clause of the Fourteenth Amendment rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 34 (2d Cir. 2017) (citing *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979)); *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996).

I.    The Religious Discrimination Claims

Plaintiff alleges a single set of predicate facts relating to religious discrimination that he claims to be actionable both under the First Amendment and RLUIPA. Plaintiff alleges that Defendants collectively engaged in "verbal and physical attacks" against him because of his religion. For a First Amendment claim, the question at the pleading stage is whether the plaintiff has alleged facts showing that "defendants significantly interfered with [plaintiff's right to exercise his] religious beliefs." *McEachin v. McGuinnis*, 357 F.3d 197, 203 (2d Cir. 2004). A RLUIPA violation, on the other hand, requires a showing that "the challenged conduct substantially burdened his sincerely held religious beliefs." *Lloyd v. City of New York*, 43 F. Supp. 3d 254, 263 (S.D.N.Y. Aug. 4, 2014). The Court found in the Prior Order that "Plaintiff has failed to plausibly allege that his right to freely exercise his religion was 'significantly interfered with' in violation of the First Amendment, or 'substantially burdened' in violation of the RLUIPA." (Prior Order at 8 (quoting *McEachin*, 357 F.3d at 203 and *Lloyd*, 43 F. Supp. 3d at 263 (internal citations omitted))). The Court also found that Plaintiff did "not specify the extent of each Defendant's involvement." (*Id.*).

Plaintiff has not corrected the deficiencies identified in the Prior Order and therefore, as set forth below, his claims for religious discrimination are dismissed.

A.    The First Amendment Theory of Religious Discrimination

With respect to Plaintiff's religious discrimination claim brought under the First Amendment, Plaintiff fails to remedy the Second Operative Pleading by adequately alleging personal involvement by the Defendants. As a fundamental prerequisite "[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v.*

*Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted). "Moreover, as recently emphasized by the Second Circuit, the fact that a defendant is a supervisor is not enough to impute personal involvement onto that actor." *Gunn v. Annucci*, No. 20-CV-02004, 2021 WL 1699949, at *7 (S.D.N.Y. Apr. 29, 2021) (citing *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020); *see also Greene v. Sampson*, No. 18-CV-06103, 2021 WL 355477, at *4 (S.D.N.Y. Feb. 2, 2021).

The Court held in the Prior Order that "[a]lthough Plaintiff alleges that Bini, Ginty, Smith, Ruggiero, and Matis were responsible for 'verbal and physical attacks' against him, he does not specify *what* they said to him or *how* they attacked him. Further, he does not specify the extent of each Defendant's involvement in these alleged attacks." (Doc. 82 at 8 (emphasis in original)). Plaintiff recites a number of derogatory remarks made by "[a]ll Defendants" in the Second Operative Pleading, and states that there were "physical attacks by all listed Defendants." (SOP at 4).[6] However, such bare allegations alone do not suffice. Plaintiff makes no attempt to identify which Defendants made which alleged statements or attacks and therefore fails to adequately plead their personal involvement. *See Lloyd*, 43 F. Supp. 3d at 266 ("Personal involvement is a question of fact and must be satisfied as to each individual defendant." (internal quotation marks omitted)).

Thus, to the extent Plaintiff's religious discrimination claim is brought under the First Amendment it is, accordingly, dismissed.

---

[6] These allegations mirror those in the First Operative Pleading, such as, for example, that Plaintiff was "abused and seriously harassed by all Defendants." (TAC at 12).

B.  The RLUIPA Theory of Religious Discrimination

Plaintiff alleges that Defendants verbally and physically attacked him in violation of RLUIPA. (SOP at 7). "A plaintiff alleging a RLUIPA violation must first show that the challenged conduct substantially burdened his sincerely held religious beliefs." *Lloyd*, 43 F. Supp. at 263 (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005)). "RLUIPA prohibits the government from burdening a prisoner's freedom to exercise his or her religion unless it can demonstrate that the burden 'is in furtherance of a compelling governmental interest,' and 'is the least restrictive means of furthering that compelling governmental interest.'" *Id.* (quoting 42 U.S.C. § 2000cc-1(a)). However, "[v]erbal abuse, threats, and intimidation, standing alone, without injury or damage, do not amount to a constitutional deprivation." *Coston v. DOCCS*, No. 20-CV-00350, 2020 WL 1189306, *3 (S.D.N.Y. Mar. 11, 2020).

Plaintiff alleges neither when or how these attacks occurred nor their perpetrators. Nor does Plaintiff explain how any such attacks substantially burdened his religious beliefs. *See id.* ("Plaintiff's assertions that a corrections officer made negative comments about his religion are insufficient to state plausible claims for relief under RLUIPA . . . . Plaintiff's allegations do not suggest that corrections officers substantially burdened or interfered with his religious practices.") Plaintiff's conclusory allegations of attacks do not meet the standard for showing that a religious belief is substantially burdened. Such a showing would require Plaintiff to:

> demonstrate that the government's action pressures him to commit an act forbidden by his religion or prevents him from engaging in conduct or having a religious experience mandated by his faith. In addition, this interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.

*Graham v. Knebel*, No. 08-CV-04364, 2009 WL 433482, *3 (S.D.N.Y. Dec. 1, 2009) (citing *Graham v. Mahmood*, No. 05-CV-10071, 2008 WL 1849167, at *14 (S.D.N.Y. 2008)).

7

Thus, Plaintiff has failed to adequately plead that Defendants substantially interfered with his religious beliefs. Plaintiff's religious discrimination claim under RLUIPA is, accordingly, dismissed.

II.   The Fourteenth Amendment Conditions of Confinement Claims

Plaintiff alleges four claims related to his conditions of confinement: (i) Defendants failed to protect him from the June 5, 2020 D-Pod assault; (ii) Defendants were deliberately indifferent to his medical needs and failed to provide minimum life necessities; (iii) Defendants subjected him to unsanitary shower conditions; and (iv) Defendants ignored his sick call slips. (*See* SOP at 8-11). Each of these claims is brought under the Fourteenth Amendment pursuant to § 1983.

A pretrial detainee can demonstrate that prison officials violated the Fourteenth Amendment by showing that (1) "the inmate [was] incarcerated 'under conditions posing a substantial risk of serious harm;' and [(2)] the prison official showed 'deliberate indifference to inmate health or safety.'" *Rembert v. Cheverko*, No. 12-CV-09196, 2014 WL 3384629, at \*5 (S.D.N.Y. July 10, 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)); *see also Darnell*, 849 F.3d at 29 ("A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions.") The first prong of this test is objective and requires the plaintiff to show that his conditions of confinement "pos[ed] an unreasonable risk of serious damage" to his safety. *Darnell*, 849 F.3d at 30. The second prong requires that the plaintiff demonstrate that prison officials "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id*. at 35.

A.  The June 5, 2020 D-Pod Assault

Plaintiff alleges that on June 5, 2020, Defendants placed him in the D-Pod housing unit with Trevor Nelson and Joseph Powell—two inmates with "flight [sic] risk" orders issued against them. (SOP at 8). Plaintiff alleges also that he "was punched, harassed, beat, and assaulted" by those inmates and that "harm was done." (*Id.*).

i.  The Objective Prong

"District courts in the Second Circuit have pointed to the existence, or lack thereof, of no-contact orders as indications that a substantial risk of harm may exist." *Mays v. Falu*, No. 18-CV-06145, 2019 WL 6619330, at *8 (S.D.N.Y. Dec. 5, 2019); *see also Smith v. Cty. of Westchester*, No. 17-CV-09858, 2019 WL 3006407, at *1-3 (S.D.N.Y. July 10, 2019) (objective prong under the Fourteenth Amendment adequately pled as "the keep-separate order [was issued] in response to a risk of serious physical harm to [the] plaintiff"); *Ortiz v. Stancari*, No. 94-CV-01685, 1997 WL 539925, at *5 (S.D.N.Y. Aug. 28, 1997) (alleging that a no-contact order should have alerted defendants to a risk of harm sufficient to survive summary judgment).

When determining whether "the risk of an inmate's violence against other inmates is sufficiently serious[] to trigger constitutional protection, the focus of inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a substantial risk of serious harm." *Luckey v. Jonas*, No. 18-CV-08103, 2019 WL 4194297, at *4 (S.D.N.Y. Sept. 4, 2019) (quoting *Blake v. Kelly*, No. 12-CV-07245, 2014 WL 4230889, at *5 (S.D.N.Y. Aug. 26, 2014)). The detainee must demonstrate further that the "unreasonable risk was 'actual or imminent.'" *Vickers-Pearson v. City of New York*, No. 18-CV-08610, 2020 WL 5732028, at *5 (S.D.N.Y. Sept. 24, 2020) (quoting *Benjamin v. Fraser*, 343 F.3d 35, 51 (2d Cir. 2003)). Ordinarily, a plaintiff can demonstrate that he faced a substantial risk of serious harm by alleging

that "there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by plaintiff regarding the altercation or a request by plaintiff to be separated from the attacker." *Luckey*, 2019 WL 4194297, at *4 (quoting *Gilmore v. Rivera*, No. 13-CV-06955, 2014 WL 1998227, at *3 (S.D.N.Y. May 14, 2014)).

This Court, in the Prior Order, "assume[d] that the[] 'fight-risk/keep away' orders were no-contact orders issued to prevent Nelson and Powell from interacting with Plaintiff or other inmates generally." (Doc. 82 at 10). The Court found also that because "[s]ometime after Plaintiff was placed in the D-Pod unit, Nelson and Powell allegedly assaulted him, causing serious physical injuries," that "Plaintiff has satisfied the objective prong." (*Id.*). The Court sees no reason to disturb that conclusion.

ii.   The Subjective Prong

With respect to the subjective prong, in dismissing Plaintiff's claims relating to the June 5, 2020 D-Pod assault in the Prior Order, the Court held that "Plaintiff . . . fails to allege that [Defendants] exposed him to this substantial risk of serious harm either intentionally or recklessly. Indeed, *he does not allege that any of these Defendants 'knew[] or should have known' that the no-contact orders existed*, nor that placing him in a cell with Nelson and Powell would otherwise 'pose[] an excessive risk to [Plaintiff's] health or safety.'" (*Id.* (citing *Darnell*, 849 F.3d at 35 (alterations in original)) (emphasis added)). The Court thus held that Plaintiff's claims failed to meet the subjective prong.

Plaintiff has remedied that defect with respect to Smith, Bini, and Ginty. Plaintiff alleges, in his opposition to Defendant's motion to dismiss, that "on March 5th, 2020 a signed keep-

10

separate order was *put into place by* Harold L. Smith, Chris Bini, and James E. Ginty, against Plaintiff and inmates Trevor Nelson and Joseph Powell." (Opp. Br. at 9 (emphasis added)).[7]

Defendants respond first that "Plaintiff fails to allege how he knows" that Smith, Bini, and Ginty put the order into place. (Reply at 4). That argument misrepresents Plaintiff's burden at the pleading stage. Plaintiff need not allege *how he knows* that certain allegations are true; he need only allege factual allegations that when "accepted as true . . . state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678. It is a plausible inference that Smith, Bini, and Ginty knew of the no contact order if they issued it. Accepting Plaintiff's allegation as true, their purported knowledge is sufficient to satisfy the subjective prong. *See, e.g.*, *Mays*, 2019 WL 6619330, *9 (finding allegations that defendant "knew that [p]laintiff was under a no-contact order with [another inmate], and knew that the order meant that the two were to be kept apart . . . [and] informed [co-defendant] of the same" sufficient at the pleading stage); *Smith*, 2019 WL 3006407, *3 ("Plaintiff also adequately pleads the *mens rea* prong as to [defendant]. Plaintiff alleges he told [defendant] about the keep-separate order and asked [defendant] not to place plaintiff and [another inmate] in the same bullpen."). That Smith, Bini, and Ginty issued the no contact order raises an inference of their knowledge at least as plausible as would be raised by them being told about the order by another guard or by Plaintiff himself. *See Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("Evidence that a risk was 'obvious or otherwise must have been known to a defendant'

---

[7] Given the liberality afforded *pro se* litigants, it is appropriate to consider new allegations in a *pro se* plaintiff's opposition papers where they are consistent with the allegations contained in the pleading. *Vail v. City of New York*, 68 F. Supp.3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a pro se plaintiff's opposition memoranda 'are consistent with the allegations contained' in the Complaint, they may be read 'as supplements to th[e] pleadings'" (quoting *Boyer v. Channel 13, Inc*., No. 04-CV-02137, 2005 WL 2249782, at *6 (S.D.N.Y. Mar. 9, 2005)); *see also Davis v. Cty. of Suffolk*, No. 18-CV-00303, 2020 WL 7699919, at *4 (E.D.N.Y. Oct. 30, 2020) ("[I]n deciding a motion to dismiss a pro se complaint, it is appropriate to consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint, including documents that a pro se litigant attaches to his opposition papers." (internal citations and quotation marks omitted)), *adopted by* 2020 WL 7041082 (E.D.N.Y. Dec. 1, 2020).

may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." (quoting *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003)).

Defendants' second argument as to the subjective prong, that Plaintiff "fails to allege . . . how [Smith, Bini, and Ginty] intended to violate th[e] order," similarly fails because Plaintiff alleges specifically that "Smith, Bini, Ginty, Matis, exposed Plaintiff to substantial risk of serious harm *intentionally* since they knew [a] no-contact order existed prior to June 5th, 2020 but still . . . placed inmates with documented fight risks with each other." (Opp. Br. 9-10 (emphasis added)). Plaintiff alleges explicitly that Defendants acted intentionally despite knowledge of the risk posed. *See Smith*, 2019 WL 3006407, *2 ("To plead the *mens rea* prong, a pretrial detainee must plausibly allege 'that the defendant-official acted intentionally . . . or recklessly failed to act with reasonable care to mitigate the risk that the condition posed . . . even though the defendant-official knew, or should have known,' of the risk." (quoting *Darnell*, 849 F.3d at 35)).

Defendants' motion to dismiss Plaintiff's conditions of confinement claim relating to the D-Pod assault is, accordingly, denied with respect to Defendants Smith, Bini, and Ginty.

However, as to Calangelo, Ruggiero, and Matis, Plaintiff fails to allege how these Defendants knew that a no contact order existed between Plaintiff and inmates Powell and Nelson. Any claim against these individuals based on the no contact order is, therefore, dismissed.

B.  Medical Needs and Minimum Life Necessities

The second category of Plaintiff's Fourteenth Amendment claims relates to Defendants' alleged deliberate indifference to Plaintiff's medical needs. As with Plaintiff's failure to protect claim, "[t]o state a deliberate indifference [to medical needs] claim under the Fourteenth Amendment, plaintiff's allegations must satisfy two prongs: an objective prong and a *mens rea* prong." *King v. Falco*, No. 16-CV-06315, 2018 WL 6510809, at *7 (S.D.N.Y. Dec. 11, 2018).

Under the first prong, the inmate's medical needs must be objectively "serious." *Flemming v. Velardi*, No. 02-CV-04133, 2003 WL 21756108, at *2 (S.D.N.Y. July 30, 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the second prong, "the facts must give rise to an inference that the persons charged with providing medical care knew of those serious medical needs and intentionally disregarded them." *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000).

The Court previously dismissed Plaintiff's deliberate indifference to medical needs claims because "Plaintiff [did] not identify the injuries from which he allegedly suffers that require medical care, how or when such medical care was denied, or what impact the denial of care had on his health and well-being." (Doc 82 at 10-11). Plaintiff states now in conclusory fashion that he "suffered severe physical [and] psychological injuries because of the conditions by all listed Defendants," (SOP at 9), and that he "suffered from major breathing issues, headaches, back-pains, and sinus problems" (Opp. Br. at 11).[8] These statements fail to remedy the deficiencies identified in the Prior Order because, again, no causal connection has been pled concerning "how or when . . . medical care was denied, or what impact the denial of care had." (Doc. 82 at 10-11). Thus, the Court cannot determine whether the alleged "conditions were sufficiently serious" or "posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Because Plaintiff's claim relating to medical needs and minimum life necessities fails at the objective prong, the Court need not address the subjective prong.

Plaintiff's conditions of confinement claim relating to medical needs and minimum life necessities is, accordingly, dismissed.

---

[8] Plaintiff made similar allegations in the First Operative Pleading, such as, for example, that he suffered "headaches, trouble breathing, and sinus problems" as well as "injury to my life and damages to my body, profuse sweating, weakness, and dizziness." (TAC at 11).

13

C. Unsanitary Shower Conditions

With respect to Plaintiff's shower conditions claim—his third conditions of confinement theory under the Fourteenth Amendment—the Court held in the Prior Order that "even viewed in the most favorable light . . . [P]laintiff[] fail[s] to allege facts showing the personal involvement of any defendant . . . much less that any defendant knew about the mold [or mildew], as well as [their] risks, and exhibited deliberate indifference to th[ose] dangers." (Doc. 82 at 13 (quoting *McNair*, 2018 WL 3300675, at *8)). Plaintiff alleges in the Second Operative Pleading that there are "health and safety violations by all Defendants." (SOP at 10). This is insufficient to plead Defendants' personal involvement in any constitutional deprivation stemming from shower conditions. *See Kellier v. Billups*, No. 21-CV-03921, 2021 WL 2435556, at *5 (S.D.N.Y. June 14, 2021) ("To state a claim under section 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation."). Plaintiff does not explain what roles, specifically, Defendants had in perpetuating any unhealthy shower conditions.[9] Because Plaintiff fails to plead personal involvement under § 1983, the Court need not consider the objective and subjective prongs with respect to the alleged shower conditions. *Alfaro Motors*, 814 F.2d 886 (failure to plead personal involvement renders a claim "fatally defective on its face.").

The Fourteenth Amendment conditions of confinement claim based upon unsanitary shower conditions is, accordingly, dismissed.

---

[9] Plaintiff's bare allegation that "[c]omplaints and grievance reports to [Smith], [Ginty], [Bini], [and Calangelo] about shower problems + mold were purposefully ignored" is insufficient to show personal involvement even by these Defendants. (SOP at 16). This allegation does not state when and how such complaints were made or any information about their substance. *See Brown v. New York*, No. 20-CV-06042, 2020 WL 3630388, *3 (W.D.N.Y. June 26, 2020) (finding failure to plead personal involvement when plaintiff alleged that he wrote letters to defendants about mold in the showers because defendants were not alleged to have otherwise participated in the purported violation).

D.  Sick Call Slips

Finally, Plaintiff alleges that each of the Defendants "purposefully ignored" his "sick call slips." (SOP at 11). The Court found in the Prior Order that the sick call slip "allegations [we]re emblematic of [Plaintiff's] general, conclusory statements." (Doc. 82 at 15 (citing *Roundtree v. City of New York*, No. 15-CV-08198, 2018 WL 1586473, at *6 (S.D.N.Y. Mar. 28, 2018))). In the First Operative Pleading, Plaintiff alleged that "sick call slips . . . to Smith and Ginty were indeed purposefully ignored and health and safety concerns problems never fix[ed]." (TAC at 11). The Second Operative Pleading fares no better. Plaintiff states merely the bare legal conclusion that "because of ignored sick calls, denial of medical care, Plaintiff['s] conditions and suffering equal sufficiently serious deliberate indifference." (SOP at 11). Plaintiff alleges no *facts* aside from these conclusory statements to "suggest that he was suffering from a 'sufficiently serious' medical condition" (Doc. 82 at 15 (quoting *Patterson v. Ponte*, No. 16-CV-03156, 2017 WL 1194489, at *6 (S.D.N.Y. Mar. 30, 2017)), or that Defendants were "aware of a substantial risk that serious inmate harm w[ould] result" (*Id.* (quoting *Williams v. Ramos*, No. 13-CV-00826, 2013 WL 7017674, at *7 (S.D.N.Y. Dec. 23, 2013)). Because Plaintiff's sick call slips claim fails at the objective prong, the Court need not consider the subjective prong.

Plaintiff's Fourteenth Amendment conditions of confinement claim concerning the sick call slips is, therefore, dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Second Operative Pleading is GRANTED IN PART. The Court dismisses Plaintiff's claims concerning the: (1) verbal and physical attacks to his Muslim faith; (2) deprivation of medical care and minimum life necessities; (3) the presence of mold, mildew, and sewage in the showers; and (4) sick call slips

being ignored. Although "courts generally grant a *pro se* plaintiff leave to amend a complaint to

cure its shortcomings, . . . leave to amend may be denied if the plaintiff has already been given an

opportunity to amend but has failed to cure the complaint's deficiencies." *Michel v. Orange Cty.,*

*New York*, No. 21-CV-09406, 2022 WL 103581, at *3 (S.D.N.Y. Jan. 11, 2022). Moreover, "leave

to amend is not necessary when it would be futile." *Reed v. Friedman Mgt. Corp.*, 541 F. App'x

40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Having been

given the opportunity to cure the pleadings' various deficiencies, specifically and fully identified

in the Prior Order, and having failed to do so, the Court dismisses the foregoing claims with

prejudice, as any amendment would be futile.

Insofar as Plaintiff's Fourteenth Amendment failure to protect claim, that claim is

dismissed with prejudice as to Calangelo, Matis, and Ruggiero. That remaining claim, as alleged

against Smith, Bini, and Ginty shall proceed into discovery.

The remaining Defendants, Smith, Bini, and Ginty, are directed to file an Answer to the

Second Operative Pleading within fourteen (14) days of this decision. The Court will thereafter

docket a Notice of Initial Conference.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not

be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge*

*v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith

when he seeks review of a nonfrivolous issue).

The Clerk of Court is respectfully requested to: (1) terminate the motion sequence pending at Doc. 99; (2) terminate as Calangelo, Ruggiero, and Matis as Defendants in this action; and (3) mail a copy of this Memorandum Opinion and Order to Plaintiff.

**SO ORDERED:**

Dated:  White Plains, New York
        May 24, 2022

_____
Philip M. Halpern
United States District Judge

17